

## CLEVELAND, WATERS AND BASS, P.A.
### ATTORNEYS AT LAW

MARK D. WISEMAN, ESQUIRE
(603) 224-7761 EXT. 1017
(603) 224-6457 FACSIMILE
WISEMANM@CWBPA.COM

TWO CAPITAL PLAZA, P.O. BOX 1137
CONCORD, NEW HAMPSHIRE 03302-1137

May 4, 2021

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**
**7014 0150 0001 0510 0519**

Kohler Co.
444 Highland Drive
Kohler, WI  53044

> **Re:**   **Interinsurance Exchange of the Automobile Club v. Kohler Co., et al**
> **Docket #:  219-2021-CV-00137**

Dear Sir/Madam:

Enclosed please find a copy of the service of process made upon the New Hampshire Secretary of State in the above-captioned matter. You are a named defendant.

Thank you.

Very truly yours,

Mark D. Wiseman

MDW/kcm
Enclosures

cc:   Justin Boehret, Esquire (w/out enclosures via email boehretj@stutmanlaw.com)

# Merrimack County Sheriff's Office

DAVID A. CROFT
333 Daniel Webster Hwy
Boscawen, NH 03303
Phone: 603-796-6600

KOHLER CO
444 HIGHLAND DR
KOHLER, WI 53044

AFFIDAVIT OF SERVICE

MERRIMACK, SS.                                            4/ 29 /2021

I, DEPUTY STACIE FISKE, this date at 12:20 a.m./p.m., summoned the
within named defendant KOHLER CO as within commanded by leaving at the
office of William M. Gardner, Secretary of State of New Hampshire, its true
and lawful Attorney for the service of process under, and by virtue of,
Chapter 510:4, New Hampshire Revised Statutes Annotated, as amended, a true
and attested copy of this Summons and Complaint, and I paid the Secretary
of State ten ($10.00) dollars as his fee for accepting service.

FEES

| | |
|---|---|
| Service | $25.00 |
| Postage | 1.00 |
| Travel | 15.00 |
| PD to SOS | 10.00 |
| TOTAL | $51.00 |

DEPUTY STACIE FISKE
Merrimack County Sheriff's Office

A TRUE COPY ATTEST:

STACIE FISKE, DEPUTY
Merrimack County Sheriff's Office

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT



Strafford Superior Court
259 County Farm Road, Suite 301
Dover NH 03820

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name: **Interinsurance Exchange of the Automobile Club v Kohler Co., et al**
Case Number: **219-2021-CV-00137**

Date Complaint Filed: April 21, 2021
A Complaint has been filed against Kohler Co.; LSP Products Group, Inc. in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| June 06, 2021 | Interinsurance Exchange of the Automobile Club shall have this Summons and the attached Complaint served upon Kohler Co.; LSP Products Group, Inc. by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| June 27, 2021 | Interinsurance Exchange of the Automobile Club shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Kohler Co.; LSP Products Group, Inc. must electronically file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to Kohler Co.; LSP Products Group, Inc.:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

Mark D. Wiseman, ESQ

Kohler Co.
LSP Products Group, Inc.

Cleveland Waters and Bass PA Two Capital Plaza 5th Floor PO Box 1137 Concord NH 03302-1137
444 Highland Drive Kohler WI 53044
2727 Chemsearch Boulevard Irving TX 75062

BY ORDER OF THE COURT

April 22, 2021

(126564)

Kimberly T. Myers
Clerk of Court

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Strafford Superior Court
259 County Farm Road, Suite 301
Dover NH  03820

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB INSTRUCTIONS FOR SERVICE BY THE SHERIFF'S DEPARTMENT

Case Name:   **Interinsurance Exchange of the Automobile Club v Kohler Co., et al**
Case Number:   **219-2021-CV-00137**

<u>Instructions for:</u> **Interinsurance Exchange of the Automobile Club**

The attached Summons must be sent to the Sheriff's Department for service.  Service must be completed on or before **June 06, 2021**.
<u>Further action is required by you</u>
**You must:**
- **Print two copies of the Summons per defendant**
- **Print two copies of the Notice to Defendant per defendant**
- **Print two copies of the Complaint filed with the Court per defendant**
- **Make two packets for service.  Each packet should contain:**
  - **One Summons**
  - **Once Notice for Defendant**
  - **One Complaint filed with the Court**
- **Mail or hand deliver the packets to the Sheriff's Department in the county where each defendant resides.**

<u>Sheriff Departments in New Hampshire:</u>

<u>Belknap County Sheriff's Department:</u>
<u>Carroll County Sheriff's Department:</u>
<u>Cheshire County Sheriff's Department:</u>
<u>Coos County Sheriff's Department:</u>
<u>Grafton County Sheriff's Department:</u>

<u>Hillsborough County Sheriff's Department:</u>
<u>Merrimack County Sheriff's Department:</u>
<u>Rockingham County Sheriff's Department:</u>
<u>Strafford County Sheriff's Department:</u>
<u>Sullivan County Sheriff's Department:</u>

**\*If one or more of the parties resides out of state, please click <u>here</u> for the requirements\***
Service must be made upon the defendant before **June 06, 2021**.

If the Sheriff is unable to complete service by **June 06, 2021** you will receive a "Notice of Incomplete Service" from the Sheriff's Department.  You may request that new paperwork be issued by electronically filing a Request for Documents.  There is a fee for this request.

The Sheriff will mail the 'Return of Service' to you.  You MUST electronically file the 'Return of Service' with the court by June 27, 2021.

**If service is not made as directed, no further action will occur and the case may be dismissed by the court.**

NHJB-2678-Se (07/01/2018)

# Important Service Information for Sheriff

<u>Do not file this with the court</u>
Provide this information to the Sheriff's Department.
See Instructions for Service for more information.
**PLEASE PRINT CLEARLY**

Date: _____    Case #: _____

### Who are you requesting to be served?
Please provide whatever information you know

Name: _____

Address for service (no P.O. boxes):

_____    APT #: _____

_____

Home phone #: _____    Cell phone #: _____

Sex: ☐ Male ☐ Female    Race: _____

Last 4 digits of SS#: xxx-xx- _____ _____ _____ _____    D.O.B. _____

Work name & address:

_____

Special instructions for service (i.e. directions, best time to serve, cautions, etc.):

_____
_____

Vehicle description/license plate:

_____

### Your Information:
Name (please print): _____

Residential address:    Mailing address:

_____    _____

_____    _____

Phone number to contact you during business hours:

_____ Alternate #: _____

_____
Signature

♦IN-HAND SERVICE WILL INCUR EXTRA COSTS DUE TO ADDITIONAL TRAVEL♦

## SHERIFF OFFICE USE ONLY: (This will vary by Sheriff's Office)

Fees Paid: $_____ Cash #: _____ Check#: _____
Id#: _____ Waiver: _____ Money Order#: _____ Credit Card: _____
Sheriff File # _____ Authorization #: _____

NHJB-2678-Se (07/01/2018)

Instructions for filing the Return of Service:
If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1.  Select "I am filing into an existing case".  Enter 219-2021-CV-00137 and click Next.

2.  When you find the case, click on the link follow the instructions on the screen.  On the "What would you like to file?" screen, select "File Other Document" and choose "Return of Service".

3.   Scan the Return of Service packet and follow the instructions in the electronic filing program to upload the Return of Service to complete your filing.

4.  If the sheriff was unable to serve the paperwork, you can request new paperwork by filing a Request for Documents.  On the "What would you like to file?" screen, select "File Other Document" and choose "Request for Reissued Summons" from the menu and upload the Request for Documents form.


**FAILURE TO FILE THESE DOCUMENTS MAY RESULT IN YOUR CASE BEING DISMISSED.**

April 22, 2021                                    Kimberly T. Myers
Date                                             Clerk of Court

You can access documents electronically filed through our Case Access Portal by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case.  After your information is validated by the court, you will be able to view case information and documents filed in your case.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Strafford Superior Court
259 County Farm Road, Suite 301
Dover NH  03820

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE TO DEFENDANT

Case Name:  **Interinsurance Exchange of the Automobile Club v Kohler Co., et al**
Case Number:  **219-2021-CV-00137**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Strafford Superior Court.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Complete the registration/log in process.  Click Register and follow the prompts.

2. After you register, click Start Now.  Select **Strafford Superior Court** as the location.

3. Select "I am filing into an existing case".  Enter **219-2021-CV-00137** and click Next.

4. When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5. Review your Response before submitting it to the court.

**IMPORTANT**: After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

THE STATE OF NEW HAMPSHIRE

STRAFFORD, SS

SUPERIOR COURT

DOCKET # 219-2021-CV-00137

JURY TRIAL REQUESTED

## Interinsurance Exchange of the Automobile Club
3333 Fairview Road
Costa Mesa, CA 92626

v.

### KOHLER CO.
444 Highland Drive
Kohler, WI 53044

and

### LSP PRODUCTS GROUP, INC.
2727 Chemsearch Boulevard
Irving, TX 75062

## COMPLAINT

Plaintiff, Interinsurance Exchange of the Automobile Club, by and through its undersigned

counsel, by way of Complaint against Defendants, Kohler Co. and LSP Products Group, Inc.,

hereby avers as follows:

## NATURE OF THE ACTION

1.      This action seeks to recover damages caused by defects associated with Defendant,

Kohler Co.'s (hereafter "Kohler") kitchen faucet assembly (hereafter "faucet assembly")

containing as a component part, Defendant, LSP Products Group, Inc.'s (hereafter "LSP") flexible

water supply line (hereafter "water supply line").

2.      Kohler designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, warranted, and/or performed other work in connection with the faucet assembly, containing the water supply line.

3.      LSP designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, warranted, and/or performed other work in connection with the water supply line.

4.      Plaintiff is an insurer who made payments to, or on behalf of, their insureds (hereafter "Insureds") for damages caused by the faucet and water supply line, and as a result of such payments, is subrogated to the rights of its Insureds as against Kohler and LSP.

5.      Plaintiff suffered harm as a result of Kohler and LSP'S actions because the faucet assembly containing the component water supply line contained defects which caused failure causing flooding and harm to Plaintiff's insureds' real and personal property.

## PARTIES AND JURISDICTION

6.      Plaintiff, Interinsurance Exchange of the Automobile Club (hereinafter "Plaintiff"), is a reciprocal insurance exchange and unincorporated association organized under the laws of the State of California with its principal place of business located at 3333 Fairview Road, Costa Mesa, California 92626.

7.      At all times material hereto, Plaintiff was engaged in underwriting property and casualty insurance and was authorized to conduct such business in the State of New Hampshire.

8.      At all times material hereto, Plaintiff's Insureds, Matthew Marshall and Stacy Marshall (hereinafter "Plaintiff's Insureds") owned and/or occupied the property where the loss occurred, at 10 Baldwin Way, Dover, New Hampshire 03101 (hereinafter "the Property").

9.     Prior to the date of loss, May 3, 2018 (hereafter referred to as "date of loss"), Plaintiff issued a policy of insurance to its insureds bearing policy number NHH093593022 (hereinafter "the Policy"). The Policy covered the Property, including its structure and/or contents, and insured against other losses and was in effect on the date of loss.

10.     At all times material hereto, Defendant, LSP Products Group, Inc. ("LSP") is and was a corporation duly organized and existing under the laws of the State of Nevada, with a principal place of business located at 2727 Chemsearch Boulevard, Irving, Texas 75062.

11.     At all times material hereto, LSP is and was, among other things, engaged in the business of designing, engineering, manufacturing, constructing, testing, inspecting, packaging, labeling, marketing, distributing, selling, warranting, and/or performing other work in connection with flexible water supply lines used as component parts of Kohler kitchen faucet assemblies with the specific purpose that these be installed by builders, plumbers and consumers in homes and other buildings, including in the State of New Hampshire.

12.     At all times material hereto, Defendant, Kohler Co. is and was a corporation duly organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 444 Highland Drive, Kohler, Wisconsin 53044.

13.     At all times material hereto, Kohler is and was, among other things, engaged in the business of designing, engineering, manufacturing, constructing, testing, inspecting, packaging, labeling, marketing, distributing, selling, warranting, and/or performing other work in connection with faucet assemblies with the specific purpose that these be installed by builders, plumbers and consumers in homes and other buildings, including in the State of New Hampshire.

14.     At all times mentioned herein, each and every one of the defendants was the agent, servant, and employee, each of the other, and each was acting within the course and scope of his agency, service, and employment.

15.     The Court's exercise of jurisdiction over the subject matter of this lawsuit is proper pursuant to RSA 491:7.

16.     Venue lies with the Strafford County Superior Court pursuant to RSA 507:9.

## FACTS

17.     At all times material hereto, Plaintiff's Insureds owned and/or occupied the Property.

18.     On or about the date of loss, May 3, 2018, the faucet assembly containing the component water supply line malfunctioned at the Property resulting in a significant amount of water being discharged in the home and/or flooding, causing extensive damage to the Property (hereinafter "water loss").

19.     The faucet assembly which malfunctioned causing the water loss at the Property was designed, engineered, manufactured, sold, distributed, placed in the stream of commerce, marketed, packaged, labeled, constructed, tested, inspected, and warrantied by Kohler.

20.     The component water supply line which malfunctioned causing the flooding and loss at the Property was designed, engineered, manufactured, sold, distributed, placed in the stream of commerce, marketed, packaged, labeled, constructed, tested, inspected, and warrantied by LSP.

21.     At all times material hereto, the products designed, manufactured, distributed and sold by the defendants were placed in the stream of commerce and sold in New Hampshire.

22.     At all times material hereto, the defendants, knew and intended that their products would be used by members of the general public, including in New Hampshire, and knew of the specific uses, purposes, and requirements for which said goods would be utilized.

23.     The faucet assembly, including the component water supply line was in defective condition, not fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses at the time it left the possession and control of the defendants.

24.     The faucet assembly including the component water supply line which malfunctioned and caused the water loss reached the Property without substantial change in its condition and it was not altered or modified prior to, or during, its use.

25.     At all times material hereto, Kohler faucet assemblies, including the faucet assembly, were prone to suffering a burst and/or degraded inner liner in the LSP water supply line, resulting in water losses.

26.     The LSP component water supply lines, including the water supply line, were and are manufactured with inexpensive rubber that regularly suffers from burst and/or degradation resulting in flooding and damaged property.

27.     On or about the date of loss, May 3, 2018, the component water supply line inner liner in Plaintiff's Insureds' faucet assembly burst and/or degraded resulting in a water loss that caused damage to the Property.

28.     By utilizing better and economically feasible material choices and design considerations, which were well known and commonly used at the time the faucet assembly's water supply line was designed, it was practical and feasible for defendants to design, market, distribute and sell a faucet assembly with a component water supply line that was not prone to failure.

29.     Consumers who purchased, and ultimate users, including Plaintiff's Insureds, of Kohler faucet assemblies with LSP water supply lines had no way of knowing that the product was defective at the point of sale.

30.     Defendants did not instruct their customers and/or users, including Plaintiff's Insureds, to inspect the faucet assembly and water supply line for signs of failure or warn them of the faucet assembly and water supply line's susceptibility to failure.

31.     The reasonable expectation of a consumer of the Kohler faucet assembly with an LSP water supply line, including Plaintiff's Insureds, is that the life expectancy of a properly designed water supply line connected to a faucet, will equal or surpass that of the faucet, unless warned or informed by the manufacturer otherwise.

32.     Plaintiff's Insureds are in the class of persons that Defendants should reasonably have foreseen as being subject to the harms caused by the defective condition of the faucet assembly containing the water supply line.

33.     At all times material hereto, the faucet assembly containing the water supply line was used by Plaintiff's Insureds for its intended, anticipated and reasonably foreseeable use.

34.     The water supply line in the faucet assembly was manufactured on or about February 27, 2010, and it failed within and before the expiration of the reasonably expected useful life as anticipated by Plaintiff's Insureds and user.

35.     The faucet assembly, according to the instructions or warnings supplied with the faucet assembly and water supply line, did not require maintenance, care or replacement within the reasonably expected useful life of the faucet assembly and water supply line.

36.     As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

## CAUSES OF ACTION

## COUNT I –NEGLIGENT DESIGN (LSP)

37.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

38.     LSP owed to consumers and other foreseeable users, including the Plaintiff's Insured, various duties to design, manufacture, assemble, test, inspect, market, sell and/or distribute water supply lines without defects and/or deficiencies, so as not to create a foreseeable risk of harm to persons or property, including the risk of serious flooding and property losses.

39.     Plaintiff's Insured was a member of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply line's defective condition.

40.     The foreseeable risk of harm to property associated with the failure of these water supply lines, including the water supply line, and the severity of such harm was substantial and warranted adequate care in the design of the water supply lines, including the water supply line so as to minimize the risk of failures and resulting harm.

41.     The likelihood of the occurrence of harm to real and personal property as the result of failure of the water supply lines, including the water supply line, was foreseeable by LSP at the time the water supply line was designed, manufactured and distributed.

42.     In the exercise of ordinary care, reasonable and feasible alternative designs were available readily achievable at the time the water supply line was designed.

43.     The available and practical reasonable alternative designs would have eliminated the propensity for failure of these water supply lines, including the water supply line.

44.     As the designer, manufacturer, distributor and/or seller of the water supply lines, it was the duty of LSP to:

a.      Use reasonable care in the design and engineering of its water supply lines, including the water supply line, so that they would be reasonably fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines;

b.      Use reasonable care in the design and engineering of its water supply lines, including the water supply line, such that they would be equipped with all necessary and properly functioning safeguards which would prevent the inner liner from burst and/or degradation while it was being properly used; and

c.      Use reasonable care in the design and engineering of its water supply lines as to eliminate any hazard that would permit the inner liner from burst and/or degradation, resulting in damage.

45.     LSP breached these duties in one or more of the following ways:

a.      LSP knew or should have known that its water supply lines, including the water supply line was designed without concern for safety and performance;

b.      LSP failed to exercise ordinary care so as to design the inner liner so that it would not burst and/or degrade during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines, including the water supply line;

c.      LSP failed to exercise ordinary care in choosing the material for the manufacture of the inner liner;

d.      LSP failed to exercise ordinary care so as to adequately understand the properties of the materials used for the manufacturing of the inner liner, including that of the water supply line and account for the properties of the material used for their manufacturing;

e.      LSP failed to exercise ordinary care so as to account for design considerations applicable to the material from which the inner liner was made, including that of the water supply line, which were well known and commonly utilized at the time the inner liner was made.

    f.     LSP failed to exercise ordinary care so as to design a water supply line that would have an adequately long useful life without failure, to accommodate the reasonable expectation of consumers;

    g.    LSP failed to exercise ordinary care to test the design of the inner liner during the design phase so as to verify that it would not burst and/or degrade during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines, including the water supply line;

    h.    LSP negligently designed the water supply line in other ways, under the circumstances, to be determined.

46.    There were practical, economical and technically feasible alternative designs for the water supply line which would have prevented the damages to Plaintiff.

47.    As a direct and proximate result of the negligence of LSP described above, the water supply line was rendered unreasonably dangerous in light of the foreseeable risks of harm and the water supply line failed during the intended, anticipated and reasonably foreseeable use of the water supply line.

48.    As a direct and proximate result of LSP'S lack of ordinary care and aforesaid negligent acts and/or omissions, for which LSP is liable, Plaintiff's Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

49.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

50.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, LSP Products Group, Inc. for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT II –NEGLIGENT MANUFACTURE (LSP)

51.     PLAINTIFF repeats and realleges the preceding paragraphs as if fully set forth herein.

52.     LSP designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold the water supply line which was used by Plaintiff's Insureds.

53.     LSP owed to consumers and other foreseeable users, including the Plaintiff's Insureds, various duties to design, manufacture, assemble, test, inspect, market, sell and/or distribute water supply lines without defects and/or deficiencies, so as not to create a foreseeable risk of harm to persons or property, including the risk of serious flooding and property losses.

54.     In addition to being defective by design, the water supply line manufactured and distributed and/or sold by LSP also contained manufacturing defects of the inner liner and ferrule which, independently caused the water supply line to fail and rendered the water supply line unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses.

55.     Such manufacturing defects included but were not limited to brittleness of the material inner liner material, thinness of the inner liner material, failure of the material to be assembled properly within the stainless-steel braiding, and failure to properly crimp the water supply line's ferrule.

56.     The water supply line, inner liner and ferrule containing manufacturing defects left the possession and control of LSP in such defective condition, and were installed and utilized in such defective condition, without substantial alteration.

57.     Plaintiff's Insureds were a member of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply line's defective condition.

58.     The foreseeable risks of harm to property associated with the failure of this water supply line and the severity of such harm was substantial and warranted adequate care in the manufacture of the water supply line so as to minimize the risk of failures and resulting harm.

59.     The likelihood of the occurrence of harm to real and personal property as the result of failure of the water supply line was foreseeable by LSP at the time the water supply line was manufactured and distributed.

60.     As the manufacturer of the water supply line, it was the duty of LSP to:

   a. Use reasonable care in the manufacturing and assembling of its water supply lines, including the water supply line, so that they would be reasonably fit for intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines, including the water supply line; and

   b. Use reasonable care in the manufacturing and assembling of its water supply lines, including the water supply line, as to eliminate any hazard that would permit inner liner to burst and/or degrade, or the ferrule to fail, resulting in damage.

61.   LSP breached these duties in one or more of the following ways:

a.   LSP knew or should have known that its water supply lines, including the water supply line, were manufactured without concern for proper operating parameters;

b.   LSP failed to exercise ordinary care in quality control so as to identify defectively manufactured inner liner and/or ferrules before distribution.

c.   LSP failed to exercise ordinary care in monitoring the manufacturing process so as to ensure quality control during manufacturing;

d.   LSP knew or should have known that its water supply lines, including the water supply line, was manufactured without concern for production complying with design specifications;

e.   LSP knew or should have known that its water supply lines, including the water supply line was manufactured without concern for the final product becoming brittle and thin and unable to withstand normal water pressure; and

f.   LSP negligently manufactured the water supply line in other ways, under the circumstances, to be determined.

62.   As a direct and proximate result of the negligence of LSP described above, the water supply line was rendered unreasonably dangerous in light of the foreseeable risks of harm and the water supply line failed during the intended, anticipated and reasonably foreseeable use of the water supply line.

63.   As a direct and proximate result of LSP'S lack of ordinary care and aforesaid negligent acts and/or omissions, for which LSP is liable, Plaintiff's Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

64.   As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

65.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's insureds to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, LSP Products Group, Inc. for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT III – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION (LSP)

66.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

67.     Plaintiff's Insureds were members of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply line's defective condition.

68.     LSP knew, or should have known, that the water supply lines, including the water supply line, contained latent hazards and that consumers would not comprehend the latent hazards without adequate warnings/instructions.

69.     LSP knew, or should have known, that their water supply lines, including the water supply line, were highly susceptible to failure under expected installation and use conditions and that consumers would not repeatedly replace their water supply lines without adequate warnings/instructions.

70.     LSP knew, or should have known, that Plaintiff's Insureds would use the water supply line without first inspecting their durability.

71.     LSP failed to inform Plaintiff's Insureds as to the water supply line's' susceptibility to sudden catastrophic failure.

72.     LSP failed to warn/instruct consumers, including Plaintiff's Insureds that it was necessary to periodically inspect and replace the water supply lines, including the water supply line, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the water supply lines.

73.     LSP had a duty to supply necessary and adequate warnings of risks and hazards associated with the use of the water supply lines, including for the water supply line, which were known or reasonably knowable to LSP and which were likely unknown to or unappreciated by the purchasers and users of the water supply lines, including Plaintiff's Insureds.

74.     LSP breached this duty to supply necessary and adequate warnings by:

   a.   Failing to warn purchasers and users, including Plaintiff's Insureds of the useful life of the water supply line and the inner liner, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property.

   b.   Failing to warn purchasers and users, including Plaintiff's Insureds of the risk of the inner liner to burst and/or degrade over time;

   c.   Failing to warn purchasers and users, including Plaintiff's Insureds, that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

   d.   Failing to warn purchasers and users, including Plaintiff's Insureds, that the water supply line and inner liner was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

   e.   Failing to warn purchasers and users, including Plaintiff's Insureds in other ways, under the circumstances, to be determined.

75.     The water supply lines, including the water supply line, were defective and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of the water supply lines due to due to the lack of and inadequacy of warnings and instructions.

76.     Had necessary and adequate warnings been supplied, the purchasers and users of the water supply lines, including Plaintiff's Insureds, would have either not purchased and not used the water supply lines or would have otherwise avoided harm to their property.

77.     As a direct and proximate result of LSP'S lack of ordinary care and aforesaid negligent acts and/or omissions, for which LSP is liable, Plaintiff's Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

78.     As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

79.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's insureds to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, LSP Products Group, Inc. for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT IV – STRICT LIABILITY
## DESIGN DEFECT – LSP

80.     Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

81.     At all times material hereto, Defendant LSP, acting through its duly authorized agent, servants, and employees, was regularly engaged in the business of designing, manufacturing, marketing, and selling plumbing supply products, including the flexible water supply lines which are the subject of this action.

82.     LSP designed, engineered, manufactured, distributed, marketed, packaged, and sold the defective water supply lines which was installed and put into use at the property owned, leased, or occupied by Plaintiff's Insured.

83.     The water supply line that LSP designed, manufactured, distributed, marketed, and sold were defective in their design, and were unsafe, unfit, and unreasonably dangerous for the ordinary and intended use of such products when the water supply lines left LSP's possession and control.

84.     Plaintiff's Insured was a member of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

85.     LSP's water supply line was defective and unreasonably dangerous for its ordinary and intended use by design by reason that:

    a.     The water supply line would fail, leak, and cause water damage during the ordinary and foreseeable use of such product, contrary to the reasonable expectation of users and consumers of such products;

b.      The water supply line was unreasonably dangerous and not merchantable for the ordinary and intended use of these products due to the unreasonable risk of failure, leakage, and resulting water damage to real and personal property;

c.      The unreasonable risk of failure, leakage, and water damage to real and personal property greatly outweighs any benefit of the design of the water supply line as compared to the alternative metal plumbing products which the water supply line was intended to replace or compared to feasible alternative designs of flexible water supply lines;

d.      The useful service life of the water supply lines, after the expiration of which the water supply lines would become yet more highly prone to failure, was substantially shorter than the metal plumbing products the water supply lines were intended to replace, substantially shorter than the plumbing fixtures to which the water supply lines were connected, and substantial shorter than the normal end user or consumer would reasonably expect;

e.      Technically and economically feasible alternative designs which would not fail during ordinary and intended use were readily available at the time the water supply lines were designed and sold;

f.      LSP failed to properly test and inspect the water supply line during the design stage to ensure that the water supply line would not fail during the ordinary and intended use of the water supply lines;

g.      LSP designed the water supply lines without adequate consideration for appropriate material selection with regard to both the flexible hose itself, and the stainless steel sheathing or covering of the hose;

h.      The braided stainless steel sheathing or covering of the hose was prone to excessive corrosion, fracturing, and failure during the ordinary and intended use of the water supply line;

i.      The water supply line was designed without adequate consideration of water pressures to be experienced by the hose or changes and fluctuations in such water pressure;

j.      The braided stainless steel sheathing or covering was designed without adequate consideration of the corrosive elements within the environment where the water supply lines could reasonably be expected to be installed and used, resulting in accelerated corrosion and failure of the braided stainless steel sheathing or covering and bursting of the hose; and

k.      The braided stainless steel sheathing or covering was designed without adequate consideration of movement and abrasion resulting from fluctuations in water

pressure, contributing to the failure of the braided stainless steel sheathing or covering.

86.     As a direct and proximate result of the defective, unsafe, unfit, and unmerchantable condition of the water supply line described above, the water loss identified herein was caused to occur and Plaintiff's insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

87.     As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in an amount $203,863.80, in accordance with the terms and conditions of the insurance policy.

88.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, LSP Products Group, Inc. for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT V – STRICT LIABILITY
## MANUFACTURING DEFECT – LSP

89.     Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

90.     At all times material hereto, Defendant LSP, acting through its duly authorized agent, servants, and employees was regularly engaged in the business of designing, manufacturing,

marketing, and selling plumbing supply products, including the flexible water supply line which is the subject of this action.

91.     LSP designed, engineered, manufactured, distributed, marketed, packaged, and sold the defective water supply line which was installed and put into use at the properties owned, leased, or occupied by Plaintiff's Insured.

92.     The water supply lines that LSP designed, manufactured, distributed, marketed, and sold were defective in their design, and were unsafe, unfit, and unreasonably dangerous for the ordinary and intended use of such products when the water supply lines left LSP's possession and control.

93.     Plaintiff's Insured was a member of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

94.     LSP's water supply lines were defective and unreasonably dangerous for their ordinary and intended use by manufacturing defects including:

   a.     The stainless steel sheathing or covering of the hose did not meet design or manufacturing specifications; and

   b.     The flexible inner hose inside of the stainless steel sheathing or covering contained manufacturing defects.

95.     As a direct and proximate result of the defective, unsafe, unfit, and unmerchantable condition of the water supply lines described above, the water loss identified herein was caused to occur and Plaintiff's Insured suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

96.     As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

97.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, LSP Products Group, Inc. for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT VI – STRICT LIABILITY
## FAILURE TO WARN/INSTRUCT OR
## INADEQUATE WARNING/INSTRUCTION – LSP

98.     Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

99.     At all times material hereto, Defendant LSP, acting through its authorized agents, servants, and employees was regularly engaged in the business of designing, manufacturing, marketing, distributing, and selling the water supply lines which are the subject of this action.

100.    This defective LSP water supply line was installed and placed in service in the properties owned, leased, or occupied by Plaintiff's Insured.

101.    The water supply lines that LSP designed, manufactured, marketed, distributed, and sold, were defective for lack of adequate warnings and instructions and were defective when they left LSP's possession and control.

102.   Plaintiff's insured is a member of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

103.   LSP knew, or should have known, that the water supply lines posed a latent hazard and that consumers would not comprehend and be able to avoid without adequate warnings and instructions.

104.   LSP knew, or should have known, that the water supply lines were yet more highly susceptible to failure after expiration of the useful service life of the product, which was substantially shorter than the useful service life of the metal plumbing products which these water supply lines were intended to replace, substantially shorter than a reasonable consumers or end users expectation of useful service life, and substantially shorter than the useful service life of the plumbing fixtures to which they were attached.

105.   LSP knew, or should have known, that typical consumers or end users, including Plaintiff's Insured, would use the water supply lines without knowledge, understanding, or appreciation that the water supply lines had a limited or short service life in terms of years, after the expiration of which failure, leakage, and property damage would become unreasonably likely and that such persons would not know to take precautions to prevent failure, leakage, and property damage, such as periodically inspecting the water supply lines for signs of corrosion, fracturing, and failure, and replacing the water supply lines before the expiration of the useful service life.

106.   The braided stainless steel sheathing was prone to excessive corrosion when exposed to certain common household cleaning agents and chemicals, such exposure being foreseeable during the ordinary and intended use of the product.

107.    LSP knew, or should have known, that the average purchaser, consumer, or end user would not be aware of the tendency of certain household cleaning agents and chemicals to cause excess corrosion to the braided stainless steel sheathing of the supply line, would not be aware which household cleaners and chemicals might cause such accelerated corrosion and would not take measures to protect against such exposure.

108.    The water supply line was defective because the water supply line was not supplied with adequate and necessary warnings reasonably calculated to reach the purchasers, end users, and consumers of such products, alerting such end users and consumers of such products to the nature of the hazard, the gravity of the hazard, and how to avoid the hazard.

109.    Had the purchasers, end users, and consumers of these water supply lines, including Plaintiff's Insured, been adequately warned concerning the likelihood that the water supply lines would fail, they would have taken steps to avoid damages by inspecting the water supply lines for corrosion, fracture, or failure, replacing the water supply lines before the expiration of useful life, protecting the supply lines from exposure to cleaners and household chemicals causing corrosion, or not purchasing or using such water supply lines.

110.    Defendant LSP, after learning that its water supply lines could suddenly fail as a result of the stainless-steel braiding corroding, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their water supply lines, even when used for their intended purpose.

111.    As a direct and proximate result of LSP's failure to warn of the defective, unsafe, unfit, and unmerchantable condition of the water supply lines described above, the water loss identified herein was caused to occur and Plaintiff's Insured suffered damage to their real and

personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

112.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

113.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, LSP Products Group, Inc. for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT VII – BREACH OF IMPLIED WARRANTY (LSP)

114.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

115.    At the time LSP designed, engineered, manufactured, assembled, sold and/or distributed the water supply lines, including the water supply line, and placed them into the stream of commerce, LSP impliedly, warranted and represented that its water supply lines, including the water supply line, were reasonably, fit and suitable for intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse that they were in no way dangerous or defective in design or manufacture; nor were they dangerous or defective due to absent or inadequate warnings, guarding and/or instructions.

116.    The risk of damage to the user's property associated with failure of the water supply line and inner liner and/or ferrule and the severity of this risk was foreseeable by LSP.

117.    There were available, at the time these water supply lines were designed manufactured and sold, including the water supply line, practical and reasonable alternative designs that would eliminate the failure and risk of property damage to the user.

118.    The failure of LSP to utilize the available alternative designs which were practical, technically feasible and economically feasible rendered these water supply lines, including the water supply line, defective, prone to failure and unfit for the intended, anticipated and foreseeable uses, including reasonably foreseeable misuses of such water supply lines.

119.    The water supply lines and inner liner, including that of the water supply line, were also prone to failure and unfit for the intended, anticipated and recently foreseeable uses, including reasonably foreseeable misuses of such water supply lines by reason of lack of or inadequacy of warnings and instructions as described in the previous paragraphs.

120.    The inner liner of the water supply line was not only defective by design, but also defective and unfit for their intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses by reason of manufacturing defects, including but not limited to brittleness of the material, failure to monitor the manufacturing process for quality control during the process, and failure to employ adequate quality control so as to identify the defectively manufactured water supply line and inner liner before distribution.

121.    The above listed warranties implied by law were breached by LSP in that the water supply line that caused Plaintiff to suffer damages, was defective and prone to failure during the

intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuses of the water supply line.

122.    As a direct and proximate result of and as the natural and foreseeable consequence of LSP'S aforesaid breach of warranty, for which LSP is liable, Plaintiff's insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

123.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

124.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's Insureds to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, LSP Products Group, Inc. for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT VIII –NEGLIGENT DESIGN (KOHLER)

125.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

126.    Kohler owed to consumers and other foreseeable users, including the Plaintiff's insureds, various duties to design, manufacture, assemble, test, inspect, market, sell and/or distribute faucet assemblies without defects and/or deficiencies, so as not to create a foreseeable risk of harm to persons or property, including the risk of serious flooding and property losses.

127.    Plaintiff's insureds were members of the class of persons that Kohler should reasonably have foreseen as being subject to the harms caused by the faucet assembly's defective condition.

128.    The foreseeable risk of harm to property associated with the failure of the faucet assembly, and the severity of such harm was substantial and warranted adequate care in the design of the faucet assembly so as to minimize the risk of failures and resulting harm.

129.    The likelihood of the occurrence of harm to real and personal property as the result of failure of the faucet assemblies containing the component water supply lines, including the faucet assembly and water supply line, was foreseeable by Kohler at the time the faucet assembly was designed, manufactured and distributed.

130.    In the exercise of ordinary care, reasonable and feasible alternative designs were available at the time the faucet assembly was designed.

131.    The available and practical reasonable alternative designs would have eliminated the propensity for failure of the faucet assembly.

132.    As the designer, manufacturer, distributor and/or seller of the faucet assembly, it was the duty of Kohler to:

    a.  Use reasonable care in the design, engineering and assembly of its faucet assemblies, so that they would be reasonably fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses;

    b.  Use reasonable care in the design, engineering and assembly of its faucet assemblies, including the faucet assemblies, such that they would be equipped with all necessary and properly functioning safeguards which would prevent failure of their component parts; and

c.  Use reasonable care in the design, engineering and assembly of its faucet assembly so as to eliminate any hazard that would permit the component water supply line inner liner from burst and/or degradation, resulting in damage.

133.  Kohler breached these duties in one or more of the following ways:

a.  Kohler knew or should have known that the component water supply lines to its faucet assemblies, including the water supply line was designed without concern for safety and performance;

b.  Kohler failed to exercise ordinary care so as to design a faucet assembly that incorporated a water supply line with an inner liner that would not burst and/or degrade during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the faucet assembly;

c.  Kohler failed to exercise ordinary care in choosing the material for the manufacture of the water supply line used in its faucet assemblies;

d.  Kohler failed to exercise ordinary care so as to adequately understand the properties of the materials used for the manufacturing of their faucet assemblies, including that of the water supply line, and account for the properties of the material used for their manufacturing;

e.  Kohler failed to exercise ordinary care so as to account for design considerations applicable to the material from which their faucet assemblies were made, including that of the water supply line, which were well known and commonly utilized at the time;

f.  Kohler failed to exercise ordinary care so as to design faucet assembly that would have an adequately long useful life without failure, to accommodate the reasonable expectation of consumers;

g.  Kohler failed to exercise ordinary care to test the design of the faucet assembly, including the water supply line;

h.  Kohler negligently designed the faucet assembly in other ways, under the circumstances, to be determined.

134.  There were practical, economical and technically feasible alternative designs for the faucet assembly and component water supply line which would have prevented the damages to Plaintiff and their insureds.

135.   As a direct and proximate result of the negligence of Kohler described above, the faucet assembly was rendered unreasonably dangerous in light of the foreseeable risks of harm and the faucet assembly and component water supply line failed during the intended, anticipated and reasonably foreseeable use of the faucet assembly.

136.   As a direct and proximate result of Kohler's lack of ordinary care and aforesaid negligent acts and/or omissions, for which Kohler is liable, Plaintiff's insured suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

137.   As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

138.   By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, Kohler Co., for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT IX –NEGLIGENT MANUFACTURE (KOHLER)

139.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

140.   Kohler designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold the faucet assembly containing the component water supply line which was used Plaintiff's Insured.

141.    Kohler owed to consumers and other foreseeable users, including the Plaintiff's Insured, various duties to design, manufacture, assemble, test, inspect, market, sell and/or distribute faucet assemblies without defects and/or deficiencies, so as not to create a foreseeable risk of harm to persons or property, including the risk of serious flooding and property losses.

142.    In addition to being defective by design, the faucet assembly manufactured and distributed and/or sold by Kohler also contained manufacturing defects of the inner liner and ferrule which, independently caused the faucet assembly to fail and rendered the faucet assembly unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses.

143.    Such manufacturing defects included but were not limited to brittleness of the water supply line's material inner liner material, thinness of the inner liner material, failure of the inner liner material to be assembled properly within the stainless steel braiding, failure to properly crimp the water supply line's ferrule, and failure to properly attach the component water supply line to the faucet assembly.

144.    The faucet assembly containing manufacturing defects left the possession and control of Kohler in such defective condition, and were installed and utilized in such defective condition, without substantial alteration.

145.    Plaintiff's Insured was a member of the class of persons that Kohler should reasonably have foreseen as being subject to the harms caused by the faucet assembly's defective condition.

146.   The foreseeable risks of harm to property associated with the failure of this faucet assembly and the severity of such harm was substantial and warranted adequate care in the manufacture of the faucet assembly so as to minimize the risk of failures and resulting harm.

147.   The likelihood of the occurrence of harm to real and personal property as the result of failure of the faucet assembly was foreseeable by Kohler at the time the faucet assembly was manufactured and distributed.

148.   As the manufacturer of the faucet assembly, it was the duty of Kohler to:

a.   Use reasonable care in the manufacturing and assembling of its faucet assembly, including the component water supply line, so that they would be reasonably fit for intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the faucet assembly, including the water supply line; and

b.   Use reasonable care in the manufacturing and assembling of its faucet assemblies, including the water supply line, as to eliminate any hazard that would permit inner liner to burst and/or degrade, the ferrule to fail, or the improper connection of the water supply line to the faucet assembly, resulting in damage.

149.   Kohler breached these duties in one or more of the following ways:

a.   KOHLER knew or should have known that its faucet assembly, including the water supply line, were manufactured without concern for proper operating parameters;

b.   KOHLER failed to exercise ordinary care in quality control so as to identify defectively manufactured inner liner, ferrules and faucet assembly to water supply line connection before distribution.

c.   KOHLER failed to exercise ordinary care in monitoring the manufacturing process so as to ensure quality control during manufacturing.

d.   KOHLER knew or should have known that its faucet assembly, including the water supply line, was manufactured without concern for production complying with design specifications;

e.   KOHLER knew or should have known that its faucet assembly, including the water supply line, was manufactured without concern for the final

product becoming brittle and thin and unable to withstand normal water pressure; and

f.     KOHLER negligently manufactured the faucet assembly in other ways, under the circumstances, to be determined.

150.    As a direct and proximate result of the negligence of Kohler described above, the water supply line was rendered unreasonably dangerous in light of the foreseeable risks of harm and the water supply line failed during the intended, anticipated and reasonably foreseeable use of the water supply line.

151.    As a direct and proximate result of Kohler's aforesaid negligent acts and/or omissions, for which Kohler is liable, Plaintiff's insured suffered damage to their real and personal property, as well as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

152.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

153.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, Kohler Co., for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT X – NEGLIGENT FAILURE TO WARN/INSTRUCT
## OR INADEQUATE WARNING/INSTRUCTION (KOHLER)

154.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

155.    Plaintiff's insureds were members of the class of persons that Kohler should reasonably have foreseen as being subject to the harms caused by the faucet assembly's defective condition.

156.    Kohler knew, or should have known, that the faucet assembly and its component water supply line, contained latent hazards and that consumers would not comprehend the latent hazards without adequate warnings/instructions.

157.    Kohler knew, or should have known, that their faucet assemblies and component water supply lines, including the water supply line, were highly susceptible to failure under expected installation and use conditions and that consumers would not repeatedly replace their faucet assemblies and/or water supply lines without adequate warnings/instructions.

158.    Kohler knew, or should have known, that Plaintiff's insured would use the faucet assembly and component water supply line without first inspecting its durability.

159.    Kohler failed to inform Plaintiff's insured as to the water supply line's susceptibility to sudden catastrophic failure.

160.    Kohler failed to warn/instruct consumers, including plaintiff's insureds that it was necessary to periodically inspect and replace the faucet assemblies' water supply lines, including the water supply line, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the faucet assemblies and water supply lines.

161.    Kohler had a duty to supply necessary and adequate warnings of risks and hazards associated with the use of the faucet assemblies and water supply lines, including for the water supply line, which were known or reasonably knowable to Kohler and which were likely unknown to or unappreciated by the purchasers and users of the water supply lines, including Plaintiff's insured.

162.    Kohler breached this duty to supply necessary and adequate warnings by:

a.    Failing to warn purchasers and users, including Plaintiff's insureds of the useful life of the faucet assembly and water supply line and the inner liner, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property.

b.    Failing to warn purchasers and users, including Plaintiff's insureds, of the risk of the inner liner to burst and/or degrade over time;

c.    Failing to warn purchasers and users, including Plaintiff's insureds, that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

d.    Failing to warn purchasers and users, including Plaintiff's insureds, that the faucet assembly's water supply line and inner liner was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

e.    Failing to warn purchasers and users, including Plaintiff's insureds in other ways, under the circumstances, to be determined.

163.    The faucet assemblies containing the component water supply lines, including the water supply line, were defective and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of the water supply lines due to the lack of and inadequacy of warnings and instructions.

164.    Had necessary and adequate warnings been supplied, the purchasers and users of the faucet assembly with component water supply line, including Plaintiff's insureds, would have

either not purchased and not used the faucet assembly or would have otherwise avoided harm to their property.

165.   As a direct and proximate result of Kohler's aforesaid negligent acts and/or omissions, for which Kohler is liable, Plaintiff's insured suffered damage to their real and personal property, as well as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

166.   As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

167.   By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, Kohler Co., for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT XI – STRICT LIABILITY
## DESIGN DEFECT – KOHLER

168.   Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

169.   At all times material hereto, Defendant Kohler, acting through its duly authorized agent, servants, and employees, was regularly engaged in the business of designing,

manufacturing, marketing, and selling plumbing supply products, including the flexible water supply lines which are the subject of this action.

170.    Kohler designed, engineered, manufactured, distributed, marketed, packaged, and sold the defective water supply lines which was installed and put into use at the property owned, leased, or occupied by Plaintiff's Insured.

171.    The water supply line that Kohler designed, manufactured, distributed, marketed, and sold were defective in their design, and were unsafe, unfit, and unreasonably dangerous for the ordinary and intended use of such products when the water supply lines left Kohler's possession and control.

172.    Plaintiff's Insured was a member of the class of persons that Kohler should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

173.    Kohler's water supply line was defective and unreasonably dangerous for its ordinary and intended use by design by reason that:

a.    The water supply line would fail, leak, and cause water damage during the ordinary and foreseeable use of such product, contrary to the reasonable expectation of users and consumers of such products;

b.    The water supply line was unreasonably dangerous and not merchantable for the ordinary and intended use of these products due to the unreasonable risk of failure, leakage, and resulting water damage to real and personal property;

c.    The unreasonable risk of failure, leakage, and water damage to real and personal property greatly outweighs any benefit of the design of the water supply line as compared to the alternative metal plumbing products which the water supply line was intended to replace or compared to feasible alternative designs of flexible water supply lines;

d.  The useful service life of the water supply lines, after the expiration of which the water supply lines would become yet more highly prone to failure, was substantially shorter than the metal plumbing products the water supply lines were intended to replace, substantially shorter than the plumbing fixtures to which the water supply lines were connected, and substantial shorter than the normal end user or consumer would reasonably expect;

e.  Technically and economically feasible alternative designs which would not fail during ordinary and intended use were readily available at the time the water supply lines were designed and sold;

f.  KOHLER failed to properly test and inspect the water supply line during the design stage to ensure that the water supply line would not fail during the ordinary and intended use of the water supply lines;

g.  KOHLER designed the water supply lines without adequate consideration for appropriate material selection with regard to both the flexible hose itself, and the stainless steel sheathing or covering of the hose;

h.  The braided stainless steel sheathing or covering of the hose was prone to excessive corrosion, fracturing, and failure during the ordinary and intended use of the water supply line;

i.  The water supply line was designed without adequate consideration of water pressures to be experienced by the hose or changes and fluctuations in such water pressure;

j.  The braided stainless steel sheathing or covering was designed without adequate consideration of the corrosive elements within the environment where the water supply lines could reasonably be expected to be installed and used, resulting in accelerated corrosion and failure of the braided stainless steel sheathing or covering and bursting of the hose; and

k.  The braided stainless steel sheathing or covering was designed without adequate consideration of movement and abrasion resulting from fluctuations in water pressure, contributing to the failure of the braided stainless steel sheathing or covering.

174.   As a direct and proximate result of the defective, unsafe, unfit, and unmerchantable condition of the water supply line described above, the water loss identified herein was caused to occur and Plaintiff's insured suffered damage to their real and personal property, as well as well

as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

175.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

176.    By virtue of the aforesaid payments, and pursuant to the terms of the aforesaid insurance policies, Plaintiff is legally, equitably, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, Kohler Co., for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT XII – STRICT LIABILITY
## MANUFACTURING DEFECT – KOHLER

177.    Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

178.    At all times material hereto, Defendant Kohler, acting through its duly authorized agent, servants, and employees was regularly engaged in the business of designing, manufacturing, marketing, and selling plumbing supply products, including the flexible water supply line which is the subject of this action.

179.    Kohler designed, engineered, manufactured, distributed, marketed, packaged, and sold the defective water supply line which was installed and put into use at the property occupied by Plaintiff's Insured.

180.    The water supply lines that Kohler designed, manufactured, distributed, marketed, and sold were defective in their design, and were unsafe, unfit, and unreasonably dangerous for the ordinary and intended use of such products when the water supply lines left Kohler's possession and control.

181.    Plaintiff's Insured was a member of the class of persons that Kohler should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

182.    Kohler's water supply lines were defective and unreasonably dangerous for their ordinary and intended use by manufacturing defects including:

a.    The stainless steel sheathing or covering of the hose did not meet design or manufacturing specifications; and

b.    The flexible inner hose inside of the stainless steel sheathing or covering contain manufacturing defects.

183.    As a direct and proximate result of the defective, unsafe, unfit, and unmerchantable condition of the water supply lines described above, the water loss identified herein was caused to occur and Plaintiff's Insured suffered damage to their real and personal property, as well as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

184.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

185.     By virtue of the aforesaid payments, and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, Kohler Co., for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

**COUNT XIII – STRICT LIABILITY**
**FAILURE TO WARN/INSTRUCT OR**
**INADEQUATE WARNING/INSTRUCTION – KOHLER**

186.     Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though fully set forth herein at length.

187.     At all times material hereto, Defendant Kohler, acting through its authorized agents, servants, and employees was regularly engaged in the business of designing, manufacturing, marketing, distributing, and selling the water supply lines which are the subject of this action.

188.     These defective Kohler water supply lines were installed and placed in service in the properties owned, leased, or occupied by Plaintiff's Insured.

189.     The water supply lines that Kohler designed, manufactured, marketed, distributed, and sold, were defective for lack of adequate warnings and instructions and were defective when they left Kohler's possession and control.

190.     Plaintiff's insured is a member of the class of persons that Kohler should reasonably have foreseen as being subject to the harms caused by the water supply line's defective condition.

191.    Kohler knew, or should have known, that the water supply lines posed a latent hazard and that consumers would not comprehend and be able to avoid without adequate warnings and instructions.

192.    Kohler knew, or should have known, that the water supply lines were yet more highly susceptible to failure after expiration of the useful service life of the product, which was substantially shorter than the useful service life of the metal plumbing products which these water supply lines were intended to replace, substantially shorter than a reasonable consumers or end users expectation of useful service life, and substantially shorter than the useful service life of the plumbing fixtures to which they were attached.

193.    Kohler knew, or should have known, that typical consumers or end users, including Plaintiff's Insured, would use the water supply lines without knowledge, understanding, or appreciation that the water supply lines had a limited or short service life in terms of years, after the expiration of which failure, leakage, and property damage would become unreasonably likely and that such persons would not know to take precautions to prevent failure, leakage, and property damage, such as periodically inspecting the water supply lines and replacing the water supply lines before the expiration of the useful service life.

194.    The water supply line was not supplied with adequate and necessary warnings reasonably calculated to reach the purchasers, end users, and consumers of such products, alerting such end users and consumers of such products to the nature of the hazard, the gravity of the hazard, and how to avoid the hazard.

195.    Had the purchasers, end users, and consumers of these water supply lines, including Plaintiff's Insured, been adequately warned concerning the likelihood that the water supply lines

would fail, they would have taken steps to avoid damages by inspecting the water supply lines for failure, replacing the water supply lines before the expiration of useful life, protecting the supply lines from exposure to cleaners and household chemicals causing corrosion, or not purchasing or using such water supply lines.

196.    Defendant Kohler, after learning that its water supply lines could suddenly fail as a result of its defects, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their water supply lines, even when used for their intended purpose.

197.    As a direct and proximate result of a lack of necessary and adequate warnings, the loss suffered by Plaintiff's Insured was caused to occur and Plaintiff's insureds suffered damage to their real and personal property, as well as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

198.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

199.    By virtue of the aforesaid payments, and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, Kohler Co., for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## COUNT XIV – BREACH OF IMPLIED WARRANTY (KOHLER)

200.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

201.   At the time Kohler designed, engineered, manufactured, assembled, sold and/or distributed the faucet assemblies, including the component water supply lines, and placed them into the stream of commerce, Kohler impliedly warranted and represented that its faucet assemblies, including the faucet assembly, were reasonably, fit and suitable for intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse that they were in no way dangerous or defective in design or manufacture; nor were they dangerous or defective due to absent or inadequate warnings, guarding and/or instructions.

202.   The risk of damage to the user's property associated with failure of the faucet assembly and component water supply line and inner liner and/or ferrule and the severity of this risk was foreseeable by Kohler.

203.   There were available, at the time these faucet assemblies were designed manufactured and sold, practical and reasonable alternative designs that would eliminate the failure and risk of property damage to the user.

204.   The failure of Kohler to utilize the available alternative designs which were practical, technically feasible and economically feasible rendered these faucet assemblies, including the faucet assembly and component water supply line, defective, prone to failure and unfit for the intended, anticipated and foreseeable uses, including reasonably foreseeable misuses.

205.   The faucet assembly and component water supply line, were also prone to failure and unfit for the intended, anticipated and recently foreseeable uses, including reasonably

foreseeable misuses of such water supply lines by reason of lack of or inadequacy of warnings and instructions as described in the previous paragraphs.

206.    The inner liner of the faucet assembly's water supply line was not only defective by design, but also defective and unfit for their intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses by reason of manufacturing defects, including but not limited to brittleness of the material, failure to monitor the manufacturing process for quality control during the process, and failure to employ adequate quality control so as to identify the defective before distribution.

207.    The above listed warranties implied by law were breached by Kohler in that the water faucet assembly and component water supply line that caused Plaintiff to suffer damages, was defective and prone to failure during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuses.

208.    As a direct and proximate result of and as the natural and foreseeable consequence of Kohler's aforesaid breach of warranty, for which Kohler is liable, Plaintiff's insureds suffered damage to their real and personal property, as well as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in excess of $203,863.80.

209.    As a result of the water loss and resultant damages, Plaintiff has made payments to or on behalf of their Insureds in the amount of $203,863.80, in accordance with the terms and conditions of the insurance policy.

210.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's insureds to the extent of such payments.

WHEREFORE, Plaintiff, Interinsurance Exchange of the Automobile Club demands judgment against Defendant, Kohler Co., for damages in an amount in excess of $203,863.80, together with costs, interest, and such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

Respectfully submitted,
Interinsurance Exchange of the Automobile Club

By its Attorneys,
Cleveland, Waters and Bass, P.A.

Date: April 21, 2021

/s/ Mark D. Wiseman
Mark D. Wiseman, Esquire (NH Bar 2771)
Two Capital Plaza, 5th Floor
P.O. Box 1137
Concord, NH  03302-1137
(603) 224-7761